# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>PAUL DOUGLAS COMBS,<br>    Debtor. | Chapter 7<br><br>Case No. 05-6498<br><br>Adversary N. 05-570<br><br>**MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT ON COUNT 7 OF THE COMPLAINT**<br><br>(Opinion to Post) |
| RENAISSANCE AIRCRAFT LLC,<br>    Plaintiff,<br><br>v.<br><br>PAUL DOUGLAS COMBS,<br>    Defendant. | |

## I. INTRODUCTION

This matter comes before the Court on Renaissance Aircraft LLC's ("Renaissance") September 26, 2005 Motion for Summary Judgment on Count 7 of the Complaint ("Motion for Summary Judgment"). The Debtor/Defendant Paul Douglas Combs filed his Response and Alternative Cross Motion for Reduction of Judgment Amount on December 15, 2005. On January 13, 2006, Renaissance filed their Reply to the Response. Oral argument was held on February 7, 2006; thereafter the Court took the matters under advisement.

In this Memorandum Decision, the Court has now set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The

issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2005).

## II. FACTUAL BACKGROUND

This dispute is the most recent in a long line of litigation between Renaissance, The Don Luscombe Aviation Foundation, and the Debtor, in Arizona State Court and this Court. Initially, Renaissance was the plaintiff, and the Debtor was the defendant in <u>Renaissance Aircraft LLC v. Combs, et al.</u>, CV2003-003924 in the Superior Court of Maricopa County, Arizona) ("Maricopa County Case"). In Count 2 of the Complaint in the Maricopa County Case, Renaissance sought to recover for the Debtor's intentional interference with the contract between Renaissance and the Foundation. Count 2 is predicated on a November 20, 2001, Interim Arbitration Award that was entered in favor of Renaissance against the Debtor. On March 16, 2004, the Superior Court entered judgment in favor of Renaissance and against the Debtor in the amount of $2,192,969, plus interest at 10% per anum from December 18, 2001 ("Judgment"), based on the underlying Arbitration Award. The Judgment was affirmed by the Arizona Court of Appeals on March 22, 2005, which has become final. The Debtor owed $2,855,477.94 on the Judgment when he filed his bankruptcy petition.

*A. Count 2 of Superior Court Compaint*

According to the Maricopa County Case Complaint, in 1993 the Foundation acquired Aircraft Type Certificate 694, which governs the manufacture of Series 8 Luscombe aircraft. In October 1996, the Foundation granted an exclusive license to manufacture and sell Series 8 Luscombe aircraft. According to the terms of the license, only Renaissance, not the Foundation or any other party, had the legal right to legally manufacture the new Luscombe 8. The Debtor, who was then serving as one of the Directors and the President of the Foundation, did not think an entity could profitably manufacture the Luscombe 8.

However, after reviewing the confidential business plans of Renaissance, the Debtor determined that the manufacturing effort would be quite profitable. At this point, the Debtor decided to usurp for himself the manufacturing rights to the Luscombe 8 and continually interfered with Renaissance's efforts. For instance, from the inception of the license, the Debtor repeatedly declared Renaissance in default of the license agreement, failed to deliver legible copies of documents critical to the manufacturing process, or disparaged Renaissance publicly in the aviation community.

In October 1999, the Debtor, purporting to act on behalf of the Foundation, notified the Federal Aviation Administration that the license agreement had been terminated. This attempt resulted in a 2000 arbitration award in favor of Renaissance, wherein, the arbitrator ruled that the license agreement had not been terminated. Despite the Arbitration Award, the Debtor continued to seek to end the license agreement. At the Debtor's direction, the Foundation refused to acknowledge the arbitrator's decision and continually refused to perform under the license. Moreover, this time the Foundation announced plans to build a mock production line.

In November 2000, the Debtor learned that Renaissance was preparing to move its manufacturing operations from Georgia. Under the Debtor's direction, the Foundation brought a lawsuit in Georgia, seeking an order requiring Renaissance to deliver to the Foundation all of the tooling, dies, and jigs used to manufacture the aircraft and to prohibit Renaissance from moving the property out of the State of Georgia. In December, the Georgia Court entered an order enjoining the Debtor and the Foundation from initiating contact with any entities with whom Renaissance was negotiating for its relocation. Despite this order, the Debtor initiated contact with officials in Missouri where Renaissance was moving, including mailing anonymous packages disparaging Renaissance to the Missouri Department of Economic Development, the manager of the Cape Giradeau airport, and the <u>Southeast Missourian</u> newspaper. The Debtor subsequently wrote the FAA, accusing Renaissance of

3

having illegally built an experimental aircraft for hire. All these actions were taken to force Renaissance out of business.

On November 30, 2001, a second arbitrator entered an award in favor of Renaissance, resulting in a judgment against the Foundation for $2,192,969. The arbitrator found that the Debtor repeatedly made misrepresentations concerning the license agreement to the FAA, Luscombe Association members, and air show attendees. Additionally, the arbitrator ruled that the Debtor "acknowledged the falsity of a number of his own statements, and there is no question that his intent ... was to interfere with [Renaissance's] business and damage its reputation." Memo. Dec. 5, n. 3 (March 22, 2005).

In Count 2 of the Maricopa County Case Complaint, Renaissance alleged that the Debtor committed intentional interference with contractual relationships. Renaissance claims that the Debtor intentionally caused the Foundation to breach it contract with Renaissance; did not act in good faith, and acted to serve his own personal interest.

On March 16, 2004, the Superior Court ruled that there was no genuine issue of fact and that Renaissance was entitled to judgment as a matter of law on Count 2. The Superior Court entered the Judgment in favor of the Renaissance and against the Debtor in the amount of $2,192,969, plus interest at 10% per annum from December 18, 2001, until paid.

*B. Court of Appeals Decision*

On March 22, 2005, the Court of Appeals issued its decision in this matter. The Debtor raised several issues on appeal, including:

> 1) Whether the trial court erred in granting summary judgment based on issues and facts that were determined in arbitration to which Combs was not a proper party;
> 2) Whether the trial court denied Combs due process by granting summary judgment because Combs never had his day in court; and
> 3) Whether the trial court erred by granting summary judgment when such issues were barred by res judicata

The Court of Appeals ruled against the Debtor on all of these issues.

In its ruling, the Court of Appeals concluded that the trial court had correctly relied on issues and facts determined by the arbitrator. In reaching its decision, the Court of Appeals, relied on Restatement (Second) of Judgments §39 (1982). Section 39 provides:

> A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.

The Court of Appeals, applying this standard, found that the Debtor, "never disputed that he significantly participated in the arbitration." Memo. Dec. 11 (March 22, 2005). It also found that the only evidence that the Debtor presented to support his alleged lack of participation was his claim that he was never a proper party to the arbitration. The Court of Appeals affirmed the lower court's decision.

As to the Debtor's due process claims, again the Court of Appeals ruled against the Debtor. In reaching its decision, the Court of Appeals again turned to Section 39 of the Restatement. Section 39, Comment (a) states:

> A person who assumes control of litigation on behalf of another has the opportunity to present proofs and arguments on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result.

The Court of Appeals concluded that the Debtor, "had his day in court when he significantly participated in the arbitration." Memo. Dec. 12 (March 22, 2005).

### III. DISCUSSION

A motion for summary judgment should be granted if the movant has shown that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056(c). Ruling on a motion for summary judgment necessarily implicates that substantive evidentiary standard of proof which would apply at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. Procedurally, "the proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without

5

trial." In re Aquaslide "N' Dive Corp., 85 B.R. 545, 547 (9th Cir. BAP 1987). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." Frederick S. Wyle P.C. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985). The opponent may not assert the existence of some alleged factual dispute between the parties. Liberty Lobby, 477 U.S. 242 at 252, 106 S.Ct. 2505 at 2512, 91 L.Ed.2d 202. Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge, and the facts set forth therein must be admissible in evidence. Aquaslide, at 547. In addition, summary judgment must be used with care and restraint, Hutchinson v. United States, 677 F.2d 1322, 1325 (9th Cir. 1982), and is reviewed in the light most favorable to the non-moving party. Hifai v. Shell Oil Co., 704 F.2d 1425, 1428 (9th Cir. 1983).

As a preliminary matter, this Court may readily dispose of one issue. First, on the date of the hearing, February 7, 2006, the Debtor presented this Court with a Hearing Brief to Plaintiff's Motion for Summary Judgment. In its October 26, 2005 Minute Entry, the Court clearly set January 27, 2006 as the deadline for any responsive pleading by the Debtor in this matter. This Hearing Brief was filed well after the deadline. However, even if this Court were to consider the Hearing Brief, there is no new information provided by the 2002 Affidavit contained in the Brief, or by the letter discussing terms of a possible settlement. Although Renaissance asks the Court to strike the Debtor's Hearing Brief because it was not signed by the Debtor's attorney, who had not yet withdrawn on the date the Brief was filed.[1] Since the Debtor elected to proceed pro se, the Court believes the more appropriate result is to allow the Hearing Brief to remain of record. Accordingly, Renaissance's Motion to Strike is denied. From a substantive standpoint, the Hearing Brief does not proved support for the Debtor's position.

---

**1** The Court has since allowed Debtor's counsel to withdraw. Accordingly, the Response will not be stricken.

Case 2:05-ap-00570-SSC    Doc 27    Filed 03/30/06    Entered 03/30/06 15:32:45    Desc
Main Document    Page 6 of 9

As to collateral estoppel, the Debtor is collaterally estopped from relitigating issues decided in the arbitration/Maricopa County Case matter. To establish collateral estoppel a party must show (1) the issue or fact to be litigated was actually litigated in a previous suit; (2) a final judgment was entered; (3) the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it and (4) such issue or fact was essential to the prior judgment. Bridgestone/Firestone North America Tire, L.L.C. v. Naranjo, 206 Ariz. 447, 452 (Ariz. App. Div. 2 2003). This concept of collateral estoppel has been applied to bankruptcy proceedings, if the Bankruptcy Court is able to review the state court record from prior proceedings. Grogan v. Garner, 498 U.S. 279, (1991).

In applying the collateral estoppel doctrine, this Court must determine whether the Judgment entered in the Maricopa County Case sets forth each and every element of a nondischargeable debt. Renaissance argues, as an issue of law, that an intentional interference with contractual relations, which is the predicate of the Judgment in the Maricopa County Case, is also the basis to determine a debt nondischargeable under 11 U.S.C. §523(a)(6). The United States Supreme Court has clarified that § 523(a)(6) encompasses "only acts done with the actual intent to cause injury," as opposed to acts, done intentionally, that cause injury. Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974, 977 (1998). Comparatively, the elements of the tort of intentional interference as set out in Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 386, 710 P.2d 1025, 1042 (1985) are:

> (1) The existence of a valid contractual relationship or business expectancy;
> (2) knowledge of the relationship of expectancy on the part of the interferer;
> (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and
> (4) resultant damage to the party whose relationship or expectancy has been disrupted.

The third and fourth elements of the Arizona Tort of intentional interference are of particular interest to the Court. The elements require the intentional and improper interference with a contract which result in damages. The question then, for this Court,

becomes does the tort of intentional interference equate with an "intent to cause injury" as required by Gegier?

To prevail under §523(a)(6), one must show an intent to cause an injury. There are no Ninth Circuit cases on point, but it has been addressed in other circuits. The court in In re Gorchev, 27 B.R. 154, (Bankr. D. Mass. 2002) determined that because none of the Massachusetts elements of intentional interference required willful injury, the plaintiff could not as a result of the state court proceedings, rely on collateral estoppel, since the plaintiff could not " establish either wilfulness or malice with respect to any portion of the damages." Id. at 168.[2]

Conversely, the court in In re Marks 192 B.R. 379 (E.D. Pa. 1996) determined that a state court determination of intentional interference estopped relitigaiton under §523(a)(6). The facts in Marks and this case are remarkably similar. An arbitrator awarded the plaintiff judgment on intentional interference with economic opportunity. The state court later affirmed the judgment and the debtor filed a bankruptcy petition. The Bankruptcy Court concluded that the intentional interference claim was non-dischargeable. Under Pennsylvania law, a showing of intentional interference requires "an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship." Id. at 385. The Pennsylvania Court concluded that, "[t]he tort of intentional interference requires an intent to injure; this makes it a 'willful and malicious injury.'" Id.

In this matter, the Court returns again turns to the decision of the Arizona Court of Appeals:

> [The Debtor] acknowledged the falsity of a number of his own
> statements, and there is no question that his intent in making those
> statements was to interfere with [Renaissance's] business and damage its

---

**2** See also In re Hallahan, 78 B.R. 547, 552-53 (Bankr. C.D. Ill. 1987). The court, while not explicating its underlying reasoning, stated that the determination of intentional interference with business expectations does not *ipso facto* establish nondischargeability.

8

reputation within the sport aircraft community, a course of conduct that he personally orchestrated.

Memo. Dec. 5, n. 3 (March 22, 2005) (adopting the ruling of the arbitrator). It is clear to this Court that the State Courts determined that the Debtor had the intent to damage Renaissance's reputation. This satisfies the intent to injure the specific creditor as required by Geiger. The Appellate Court's decision, read in conjunction with the requirements for intentional interference, as established in Wagenseller, make it clear to this Court that the Debtor had a malicious intent to injure Renaissance. Accordingly, the Debtor is estopped from challenging this finding. His debt to Renaissance is nondischargeable pursuant to §523(a)(6).

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that Renaissance's Motion for Summary Judgment is granted. The Court shall execute a separate order incorporating this Decision.

**DATED this 30th day of March, 2006.**

**Honorable Sarah Sharer Curley
United States Bankruptcy Judge**